UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

MYRTLE LUCILLE HOLLAND,

      Plaintiff,

V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil No. 11-203-GFVT

**MEMORANDUM OPINION
AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

The Plaintiff, Myrtle Lucille Holland, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying Holland's application for Disability Insurance Benefits ("DIB"). For the reasons set forth herein, the Court will deny Plaintiff's Motion for Summary Judgment [R. 12] and grant the Defendant Commissioner's Motion for Summary Judgment [R. 13].

**I.**

Holland filed an application for DIB on November 10, 2008. [Transcript ("Tr.") 170-73.] She alleges disability beginning October 31, 2008, due to anxiety, depression, back and neck pain, numbness in both hands, "something wrong with blood," vision difficulties, arthritis, and acid reflux. [Tr. 209.] Holland's application was denied initially and on reconsideration and in a decision by Administrative Law Judge ("ALJ") Donald A. Rising on May 19, 2010. [Tr. 151-57.] The Appeals Council denied her request for review on May 26, 2011 [Tr. 1-6], making the ALJ's decision a final decision

of the Commissioner.  Holland was 55 years old at the expiration of her insured status on December 31, 2006.  [Tr. 40].  She had a high school education and past work experience as a babysitter and a janitor.  [Tr. 210, 214.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis.  *See* 20 C.F.R. §§ 404.1520. First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a clamant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Holland had not engaged in substantial gainful activity during the period from her alleged onset date of October 31, 2006 through her Date Last Insured ("DLI") of December 31, 2006.  [Tr. 14.]  At Step 2, the ALJ found that, although Holland had "medically determinable" impairments of osteoarthritis and a history of depression and anxiety prior to the DLI, she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for 12 consecutive months.  [Tr. 14-15.]  Therefore, the ALJ terminated the sequential evaluation process at Step 2.  Accordingly, on May 19,

2

2010, ALJ rising issued an unfavorable decision, finding that Holland was not under a disability as defined in the Social Security Act since October 31, 2006, her alleged onset date.  [Tr. 17-18.]  The parties have filed cross motions for summary judgment [see R. 7, 8], which are now ripe for the Court's review.

## II.

### A.

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter

3

differently and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

## B.

Holland raises essentially only one argument on appeal to this Court.  He contends that the ALJ's finding of no "severe" impairment is not supported by substantial evidence.

In the Sixth Circuit, the Step 2 severity regulation is considered a *de minimis* hurdle in the disability determination process. *Murphy v. Sec'y of health and Human Servs.,* 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and work experience." *Farris v. Sec'y of Health and Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirement may be used to weed out claims that are "totally groundless." *Id.,* n. 1. The Court concludes that this is one of the exceptional "totally groundless" cases properly disposed of at Step 2.

Holland claims that the ALJ erred by accepting determinations by state agency reviewing sources who found no physical or mental impairments.  She notes that the evidence was evaluated at the initial determination level by a state agency employee, Afton Hornback, who in agency parlance was a "single decision-maker" ("SDM") with no medical credentials.  [Tr. 510.]  Hornback saw no reason to depart from a prior denial decision by ALJ Rising dated July 21, 2001 finding that Holland had no "severe" impairment.  (Tr. 69-74, 510.]  At the reconsideration level, a physician, Dr. Subhideb

Mukherjee, concurred with Hornback's conclusion.  [Tr. 531.]  At the subsequent administrative hearing, ALJ Rising noticed that the record contained no medical evidence from the relevant period between the alleged onset date of October 31, 2006 and the DLI of December 31, 2006, and requested records from Holland's treating family physician, Dr. José Echeverria.  [Tr. 30-31, 564.]  The additional records submitted include notes from four office visits in 2006, only one of which, on October 24, 2006, was squarely within the relevant two-month period.  [Tr. 565-74.]  All of the office notes refer to Holland being seen in follow-up for chronic medical conditions,  primarily "chronic and persistent neck pain,"  but under "good control with the medications prescribed."  [Tr. 565, 568, 572, 574.]  In the earlier notes, the neck and back pain is described as "persistent and severe," but the term "severe" is not used in the October 20 note and the physician stated that "[t]he patient is doing fine."  [Id.]  Dr. Echeverria's physical examination noted that Holland was "in pain," and had tenderness on palpation and spasm in the cervical spine area.  [Tr. 565.]  Her neurological examination was non-focal. [Id.]  His diagnoses on all office visits during the year were osteoarthritis producing neck pain, anxiety and depression, menopause, and a history of chest pain with a normal echocardiogram and normal Persantine Thallium stress test.  [Tr. 566, 568, 572, 574.]  He prescribed the medication Lortab for pain, but did not list any functional restrictions.

On January 19, 2007, shortly after the DLI, Dr. Echeverria reported that Holland described her back pain as being "on and off," with the same findings and diagnoses and continued good control with medication.  [Tr. 602].

ALJ Rising did not submit the new evidence to a medical reviewer, but summarized it in his decision, noting that there were no complaints or treatments for

mental health issues during the period. [Tr. 15-16.]  He concluded that there was no basis in the new evidence for finding changed circumstances warranting a departure from the finding of no "severe" impairment in the 2001 decision.  [Tr. 16.][1]

Holland focuses on the ALJ's statement that he "concur[red] in the opinion of the non-examining State agency medical consultants who found no severe physical or mental impairments"  [Tr. 17],  arguing that it does not indicate that the ALJ was aware that Hornback was an SDM.  She further alleges that Dr. Mukherjee impermissibly based his opinion on that of the SDM, in violation of SSA policy, and that SSA policies were also violated because the form completed by Hornback did not make it clear to the appeal-level adjudicator that the form was completed by an SDM rather than by a medical source.  In short, Holland contends that the ALJs decision is not supported by substantial evidence because it was ultimately based on a nonmedical source who violated agency policies.

All of Holland's contentions are incorrect.  At the outset, a reading of the ALJs decision shows that, in context, he primarily based his opinion on the lack of objective findings in the medical evidence from the very short relevant period, and the months immediately before and after.  He noted that his conclusion was supported by the small amount of medical attention Holland received, her medication, and her reported daily activities.  [Tr. 16.]  Holland testified that she had an extremely limited ability to sit, stand, and walk, and was suffering from headaches, numbness, and poor vision.  [TR. 45.]  However, before she stopped working on October 31, 2006 she worked as a

---

[1] Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837, 842 (6th Cir. 1997).

babysitter for her four and five year old grandchildren, and testified that she had done a great deal of cooking, "running and keeping up with what they were doing," and playing with them.  [Tr. 43, 51-52.]  The only reason she had stopped working on October 31 was that her daughter had moved out of the area, and she did unsuccessfully "ask around" for other babysitting jobs.  [Tr. 43-44]. She was also living with her disabled husband during this period and helped him dress.  [Tr. 16.]

The ALJ found that these circumstances eroded the overall credibility of Holland's complaints.  [Tr. 17.]  He found that she had failed to produce objective medical evidence which confirmed the severity of the symptoms allegedly arising from her conditions, or that the objectively determined medical conditions were of such severity that they could reasonably be expected to give rise to the alleged symptoms.  [Tr. 16.]  Under the circumstances, the ALJ's statement that he concurred with the state agency "medical consultants" is far from evidence that he relied unquestioningly on Hornback and Dr. Mukherjee.  The Commissioner's regulations require ALJs to consider the findings of state agency medical and psychological consultants, but they also provide that they are not binding on the ALJ.  20 C.F.R. § 404.1527 (f)(2)(i). The ALJ was clearly basing his opinion on the limited medical evidence and the plaintiff's own accounts of her fairly demanding daily activities during the period at issue.

While the language employed by the ALJ gives the impression that he may have been unaware that Hornback was an SDM, the error was ultimately harmless because concurrence with the state agency opinions is not the same thing as reliance.  Taken as a whole, it is clear that the ALJ reached his conclusion that Holland did not have a "severe" impairment based on the evidence as a whole, and is supported by substantial evidence. It

7

is also harmless because it is ultimately the plaintiff's responsibility to prove her own case, and she did not produce any medical opinion evidence that she would be restricted.

Although the lack of total reliance by the ALJ on the state agency sources is  fatal to the plaintiff's argument, a brief discussion of her remaining contentions is in order. Holland has to engage in a highly selective reading of the evidence in order to assert that Dr. Mukherjee, who is unquestionably a medical consultant ("MC"), based his opinion on the SDM, in supposed violation of agency policy.  Dr. Mukherjee's brief analysis states that "[h]aving reviewed the claim thoroughly, the [medical evidence of record] in file does not support a disabling impairment prior to 12/31/2006.  The prior adoption of the non-severe ALJ decision is, thus, hereby affirmed."  [Tr. 531.] Thus, although he agreed with Hornback's ultimate conclusion, Dr. Mukherjee's opinion was explicitly based on his review of the evidence as it existed at the time, not on Hornback's analysis.

Holland cites the Commissioner's Program Operations Manual System (POMS) at DI 24510.050, which states that, in completing SSA Form 4734-BK (the physical residual functional capacity form) the SDM must select a proper block to show whether he or she is a MC or SDM.  This section provides that: "It is important to check the correct box.  It must be clear to the appeal-level adjudicator when the SSA-4734-BK was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels."  Holland's argument that Hornback did not comply with this provision is meritless for two reasons.  First, the Sixth Circuit has held that, although the POMS is "persuasive," it is "a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law...." *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340

(6th Cir. 1989). Second, the form prepared by Hornback was designated SSA-416 ("Case Analysis"),  not SSA-4734-BK.

Even if the Court assumed, for the sake of argument, that POMS DI 24510.050 applied to Form SSA-416, *and* that the provisions of the POMS were binding rather than merely persuasive, it would not alter the fact that the ALJ conducted an independent analysis of the medical evidence and the plaintiff's testimony. His passing reference to "State agency medical consultants" (plural) does not change the Court's conclusion that the decision is supported by substantial evidence.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby ordered as follows:

(1)     Plaintiff's motion for Summary Judgment [R.  10] is **DENIED**;

(2)     Defendant's Motion for Summary Judgment [R. 11] is **GRANTED**; and,

(3)     **JUDGMENT** in favor of the defendant will be entered contemporaneously herewith.

This 28th day of September, 2012.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge